**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

**ELIZABETH L. PERRIS**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK
STEPHEN A. RAHER, LAW CLERK

September 21, 2011

M. Caroline Cantrell
M. Caroline Cantrell & Assoc. PC
1500 NE Irving St., Ste. 100
Portland, OR  97232

Michelle M. Bertolino
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, OR  97204-3136

    Re: <u>Kenny L. Norred and Wendi L. Norred</u>, Case No. 09-40186-elp13
        Motion to Allocate Insurance Proceeds

Dear Counsel:

    This matter came before the court on debtors' Motion to Allocate Insurance Proceeds. As explained below, I conclude that OnPoint Credit Union is entitled to payment of its secured claim, but is not required to release its lien until debtors receive a discharge.

    Debtors move to allocate insurance proceeds that were paid as a result of the post-confirmation destruction of their vehicle. They ask the court to order that the secured creditor, OnPoint Community Credit Union ("OnPoint"), be paid the secured portion of its claim, with the remainder paid to the chapter 13 trustee to distribute to unsecured creditors. OnPoint objects, arguing that it is entitled to the entire insurance proceeds, because the proceeds are less than the entire amount of the unpaid debt.

    In 2004, debtors financed the purchase of a 2004 Pontiac Grand Am and obtained liability insurance on the vehicle. Portland Teachers Credit Union, which became OnPoint, was named as loss payee under the policy as the lienholder.

    In 2009, debtors filed a petition under chapter 13. The court confirmed their chapter 13 plan in February 2010. Under the plan, the secured portion of OnPoint's claim was valued at $3,905. The trustee has made payments to OnPoint on the secured claim.

At some point post-confirmation, the Grand Am caught on fire and was a total loss. Progressive Insurance, the insurer, issued a check jointly payable to the chapter 13 trustee and OnPoint, for $4,904.41. Debtors seek an order requiring the trustee to pay to OnPoint the balance of its allowed secured claim, which is approximately $2,200, requiring OnPoint to release its lien and turn over title of the vehicle to Progressive, and requiring the trustee to distribute the remaining insurance proceeds of approximately $2,704 to unsecured creditors.

OnPoint objects, arguing that it is entitled to the entire amount of the proceeds, because it is still owed approximately $6,000. It claims that (1) debtors authorized full payment to OnPoint; (2) the insurance proceeds are not property of the estate; (3) OnPoint, as loss payee, may collect directly from the third-party insurance company; and (4) OnPoint is entitled to the proceeds under debtors' plan and non-bankruptcy law, because it is a third-party beneficiary of the insurance policy.

The dispute distills to whether OnPoint is entitled to payment of the entire amount of the proceeds, which exceeds the amount of the secured claim under the plan, but is less than the full amount still owing on the unsecured portion of the debt, and whether OnPoint is required to release its lien.

I begin by looking at the rights of OnPoint under the confirmed plan. Creditors, including OnPoint, are bound by the provisions of the confirmed plan. § 1327(a).

The confirmed plan provides that the value of the collateral for OnPoint's claim, the Grand Am, was $3,905, which secured claim would be paid over the life of the plan. The plan fixes the value of the collateral, and thus the amount of the secured claim. According to debtors, this bifurcation of the claim left an unsecured claim of $3,549.67.

As required by § 1325(a)(5)(B), the plan provides that secured creditors will "retain their liens until the payment of the underlying debt, determined under nonbankruptcy law, or discharge under § 1328, as appropriate." Plan ¶ 2(b).

OnPoint first argues that debtor Kenny Norred ("debtor") settled the insurance claim with Progressive, and signed an authorization that Progressive would retain possession of the vehicle and that OnPoint would accept the full insurance proceeds, $4,904.41, and release the lien on the vehicle. OnPoint asserts that this settlement relinquished any rights

debtors might have in the proceeds. It has provided a copy of the Authorization for Payoff, apparently signed by debtor, as well as a letter from Progressive to OnPoint requesting that OnPoint send the car title to Progressive, based on the settlement with debtor.

Debtor did not have authority to settle this claim with Progressive. The Order Confirming Plan requires that debtors immediately report to the trustee any right to a distribution of funds or other property that exceeds $2,500 in value, and any such funds may not be used without the trustee's permission or court order. Debtor's settlement with the insurance company was in violation of this order, and will be given no effect.

OnPoint's main argument seems to be that the proceeds are not property of the bankruptcy estate, and therefore it is entitled under state law to the full amount of the proceeds, even though its secured claim as determined in the chapter 13 case is less than the amount of the proceeds.

The problem of loss or destruction of property post-confirmation is not a new or unique one. In his treatise, Judge Lundin explains:

> Many reported decisions hold that § 1327 fixes the rights of secured claim holders at confirmation and that postconfirmation destruction of the collateral cannot change the amount to which the lienholder is entitled. For example, if a creditor holds a claim secured by a car that is destroyed after confirmation, when the insurance company pays according to its contract, the creditor receives only that portion of the proceeds necessary to pay its allowed secured claim in full. The excess of insurance proceeds over the balance of the allowed secured claim is payable to the trustee for the benefit of creditors or to the debtor, depending on the provisions of the confirmed plan.

3 Keith M. Lundin, Chapter 13 Bankruptcy § 238.1 "Loss, Destruction or Surrender of Property after Confirmation" (3d Ed. 2000 & 2004 Supp.) (footnotes omitted). The treatise cites numerous cases in support of this proposition. Id. at n. 2, 3, 4. Those cases nearly universally hold that the secured creditor's rights are limited by the confirmed chapter 13 plan, based on the fact that the secured creditor is entitled to insurance proceeds only to the extent of its interest in the destroyed collateral.

M. Caroline Cantrell
Michelle M. Bertolino
September 21, 2011
Page 4

 For example, in In re Stevens, 130 F.3d 1027 (11th Cir. 1997), the court explained that, where the insurance policy protects both the debtor and the creditor, the proceeds are considered property of the estate and "distribution of those proceeds is governed according to the terms of the bankruptcy plan." 130 F.3d at 1029. To determine the interests under the policy, the court noted, not surprisingly, that it needed to "consider the nature and type of the insurance policy involved, and its relationship to property of the bankruptcy estate." Id. at 1130. Because the policy at issue in that case was intended to protect both the owner and the secured creditor from destruction of the collateral, proceeds were simply a substitute for the collateral, and the secured creditor's interest was "only as great as its interest in the collateral itself," which was defined by the confirmed chapter 13 plan. Id. Thus, the secured creditor was entitled only to the amount of its secured claim as provided in the plan.

 Many other cases rely on provisions in the insurance policies that provide for payment to a loss payee as that entity's interest may appear. In this case, the policy provides that payment for a loss to the vehicle "will be made according to **your** [debtors'] interest and the interest of any lienholder shown on the **declarations page** or designated by **you** [debtors]." Exhibit 1 at 28 (bold in original; underlining added for emphasis). The insurer had the option to make payment to both jointly or either separately. "Either way, **we** will protect the interest of both." Id. (bold in original).

 As in the policies discussed in Stevens and the cases cited in the Lundin treatise, the policy in this case provides for payment "according to . . . the interest of any lienholder" listed. It also provides that the insurance was intended to protect both the borrower and the lienholder. Thus, under the policy, OnPoint is entitled to payment only to the extent of its interest in the vehicle. That interest has been reduced through cram-down and plan payments to approximately $2,200, which is all that OnPoint is entitled to receive from the proceeds.

 All of the cases cited in the treatise, including the update, are pre-BAPCPA cases. However, BAPCPA modifies this result only slightly. Before BAPCPA, a plan that proposed to cram down a secured creditor could be confirmed only if, among other things, the plan provided "that the holder of such claim retain the lien securing such claim[.]" § 1325(a)(5)(B). Now, § 1325(a)(5)(B) says that the plan must provide that the secured creditor retains the lien until the earlier of "payment of the

M. Caroline Cantrell
Michelle M. Bertolino
September 21, 2011
Page 5

underlying debt under nonbankruptcy law" or discharge. That change does not alter who is entitled to proceeds of insurance paid on destruction of the collateral, provided that the debtor gets a discharge.

OnPoint relies on First Fidelity Bank v. McAteer, 985 F.2d 114 (3d Cir. 1993), for the proposition that the insurance proceeds are not property of the estate but instead are property of OnPoint. In that case, the debtor had purchased a vehicle prepetition. As security for the loan used to finance the purchase, debtor obtained a credit life and credit disability insurance policy naming the creditor as the primary beneficiary and debtor's estate as the secondary beneficiary. Upon debtor's death, the policy required payment to the creditor of any amount remaining under a schedule of indebtedness.

The debtor filed a chapter 13 and, under his confirmed plan, the creditor's claim was crammed down to the value of the vehicle. Debtor died, and the insurance company paid the creditor the full amount owing under the policy, which was more than the creditor was owed under the plan.

The Third Circuit concluded that the insurance proceeds were not property of the estate, and therefore were properly paid to the creditor. It noted that insurance policies owned by a debtor on the date of the petition are property of the estate, but that does not necessarily mean that the proceeds are property of the estate. Because the creditor was the primary beneficiary, its interest in the proceeds was not property of the estate and therefore could not be altered by confirmation of the chapter 13 plan.

That case is distinguishable. There, the insurance policy was the collateral for the loan, and the lender was the primary beneficiary with a right to be paid according to a payment schedule. Where, as here, the policy insures the creditor's interest in the underlying collateral, the creditor's interest is determined according to the confirmed plan, if the claim is dealt

with in the plan.[1] The creditor's interest is in the collateral, the value of which is determined by the plan.

In addition, whether the proceeds are property of the estate does not affect the amount to which OnPoint is entitled under the confirmed plan. If the proceeds are property of the estate, then the excess proceeds above what is necessary to satisfy OnPoint's secured claim should be paid to the trustee. If the proceeds are not property of the estate, they should be paid to debtors. Whether or not the proceeds are property of the estate does not change the fact that OnPoint's secured claim is fixed by the confirmed plan.

OnPoint also argues that it is an intended third-party beneficiary of the insurance policy. Although its argument is not clear, I understand it to be arguing that, as a third-party beneficiary of the insurance policy, it is not required to release its lien until it is paid the full amount owed under state law, which includes the entire proceeds of the policy.

Under bankruptcy law, OnPoint is entitled to payment of only the balance of its secured claim. However, also under bankruptcy law, it is not required to release its lien until debtor gets a discharge. As required by § 1325(a)(5)(B), the plan provides that "[s]ecured creditors shall retain their liens until the payment of the underlying debt, determined under nonbankruptcy law, or discharge under § 1328, as appropriate." Plan ¶ 2(b). Until debtors complete their plan and obtain a discharge or the unsecured claim is paid, OnPoint retains its lien.

In order to protect the interest of OnPoint, the trustee shall hold the insurance proceeds that exceed the amount paid to OnPoint on its secured claim until debtors obtain a discharge. Upon discharge, the trustee shall pay the remaining proceeds to unsecured creditors pursuant to the plan. If debtors do not complete their plan and obtain a discharge, OnPoint will be entitled to the excess proceeds.

---

[1] Judge Lundin says that "McAteer is best understood as a case in which the confirmed plan did not modify the bank's rights in the credit life proceeds. Unlike casualty insurance which substitutes for the value of the collateral, credit life insurance creates contract rights that are not limited by the lienholder's interest in collateral." Chapter 13 Bankruptcy at § 238.1.

M. Caroline Cantrell
Michelle M. Bertolino
September 21, 2011
Page 7

 Debtors should submit an order allocating the insurance proceeds as provided in this ruling.

Very truly yours,

*Elizabeth L Perris*

ELIZABETH L. PERRIS
Bankruptcy Judge

cc: Wayne Godare